## FOSTER ET AL. *v.* STATE, EX REL. CITY OF HUNTINGTON.

[No. 3050. Filed June 7, 1899.]

VERDICT.—*Special Answers.—Public Officer.*—When the jury, by answer to an interrogatory, find that a public officer at the close of his term, had on hand a specified sum of public money, the answer, to be consistent with the general verdict, will be construed as meaning the amount he then had, without regard to the amount with which he was chargeable. *p. 473.*

PUBLIC OFFICER.—*Action Against.—Demand.*—No demand is necessary before suit against a public officer, for failure to turn over to his successor at the expiration of his term, all public money in his hands belonging to the office. *p. 474.*

From the Huntington Circuit Court. *Affirmed.*

*Robert Lowry, R. A. Kaufman* and *B. M. Cobb,* for appellants.

*J. F. France* and *Z. T. Dungan,* for appellee.

ROBINSON, J.—Suit on a city treasurer's bond. Upon a special verdict by the jury, judgment was rendered in the city's favor for $2,747.51. The action of the court in giving judgment in appellee's favor on the special verdict is the only question discussed by appellants' counsel.

John M. Hargrove was elected to and held the office of city treasurer of Huntington, Indiana, four consecutive terms, the last beginning on the first Monday in September, 1892, and ending the first Monday in September, 1894. On the 1st of September, 1892, he had in cash and securities a sum equal to the amount he was then chargeable with as city treasurer, and had in cash $5,948.79. On September 3, 1894, he had cash on deposit $40,097.09, and on Septem-

ber 4, he paid treasurer school board $6,075, and September 1, paid out $122.50; that there was in his hands as such treasurer belonging to the city at the close of his term of office, September 4, 1894, the sum of $33,899.59; that he had on deposit September 1, 1892, in funds belonging to the city, $8,672, and had $716.36 in his hands not on deposit; that he was charged with the sum of $9,376.37 on the first Monday in September, 1892; that he received during his last term $185,970.91, making a total with which he was chargeable of $195,347.28; that he paid out during that term $156,672.32, leaving a balance of $38,674.96. The jury found in answer to an interrogatory that, at the time he went out of office, he owed the city $38,664.43; that he paid over at the close of his term of office and during the four months following $36,294.32, leaving the amount due the city $2,370.20, the interest on which was $377.41, making a total of $2,747.61, which the jury found was due the city, and for which sum judgment was rendered.

It will be seen that the jury place the total amount he had on hands when he took office at $9,388.36, and they also say that he was chargeable only with $9,376.37; they also find from his reports that the balance in his hands when he went out of office was $38,674.96, and that when he went out of office he owed the city $38,664.43. These show a slight discrepancy in the figures set out in the verdict, but it is seen that in the final result reached by the jury appellants have the advantage of the difference, and, in fact, appellants' counsel have not discussed the matter in their brief.

Interrogatory 136 and answer were as follows: "How much money was in the hands of J. M. Hargrove as such treasurer belonging to the city of Huntington at the close of his term of office, September 4, 1894? Ans. $33,899.59." "106. Was the aggregate sum paid by the defendant Hargrove by himself and deputy after O. S. Bey (his successor in office) took possession of said office as city treasurer $36,-294.33? Ans. Yes." "108. Was the sum of $36,294.33

paid by said Hargrove and his deputy to O. S. Bey, city treasurer, before the commencement of this suit? Ans. Yes."

It is argued that the answer to interrogatory 136 must be construed to mean the amount due the city at that time. It is true that ordinarily the language used would be so construed. But it would not necessarily be so construed. The jury may have meant, and, when taken in connection with other interrogatories, they evidently did mean that that sum was all of the city's money he then actually had. They found that when he went out of office he owed the city $38,664.43, and that he turned over to his successor $33,899.59, and about two months later he paid the further sum of $1,012.96, and during the following four months various other sums. Taking all the findings upon that question together, the jury must be understood to have meant by the answer to interrogatory 136 to give the amount of the city's money he then had, without reference to what he owed the city.

It is argued that the verdict is further inconsistent. Interrogatory twenty-nine and answer are as follows: "Did the defendant Hargrove on the first Monday in September, 1892, have in cash belonging to the city the sum of $5,948.79? Ans. Yes." If the jury intended by this answer to say that that sum was all the city's money he then had, it would necessarily follow that the default did not occur during the last term of office. In answer to other interrogatories, the jury say that at that time he had in cash and securities a sum equal to the amount he was then chargeable with as city treasurer, and that he was charged with the sum of $9,376.37 belonging to the city. If interrogatory twenty-nine and answer stood alone, it might be said that the sum named was intended to mean the whole amount with which he should be charged, but it does not necessarily mean that, and nothing else, and cannot be said to be in conflict with other interrogatories. It is not necessarily contradictory of anything found elsewhere in the verdict. Aside from any direct an-

swers of the jury that the shortage ocurred during the last term of office, we think the facts found by the jury show that the default did occur during that term. So that, disregarding any answers that might be conclusions, the verdict shows sufficient facts in that respect to sustain the judgment.

It is argued that there is no finding of demand made before suit was brought. Hargrove's term expired the first Monday in September, 1894. This suit was brought in March, 1896. As against Hargrove, no demand was necessary. It was his duty to pay over to his successor all moneys he had belonging to the city upon the expiration of his term. That was a part of his duty as a public officer, and the time was fixed when it should be done. *Moore, Adm.,* v. *State, ex rel.,* 55 Ind. 360. And it is held that when money is payable at a fixed time, or upon the happening of a certain event, no demand is necessary before suit.

In *Voris* v. *State,* 47 Ind. 345, it is held that no demand is necessary in a suit on a guardian's bond against the guardian and surety; that the liability of the surety is fixed by the failure of the principal; and that, where the suit is against the heirs of the surety, no demand upon them is necessary. *Buchanan* v. *State, ex rel.,* 106 Ind. 251; *Higgins* v. *State, ex rel.,* 87 Ind. 282; *Jones* v. *Jones,* 91 Ind. 378; *Ferguson* v. *State, ex rel.,* 90 Ind. 38; *Hudson* v. *State, ex rel.,* 54 Ind. 378; *Nutzenholster* v. *State, ex rel.,* 37 Ind. 457; *Frazee* v. *McChord,* 1 Ind. 224. But even if a demand was necessary, the jury found that one had been made before suit was brought. The verdict shows that on a certain date before suit was brought, O. S. Bey, as treasurer of the city, demanded of Hargrove or his deputy the money then in Hargrove's hands belonging to the city, and the jury also found that, prior to the filing of the complaint, the city attorney, for the city, made demand on Hargrove and on each of the sureties for the money in controversy. This was sufficient to give appellants to understand that the city claimed the money in controversy which had not been paid to it by its

former treasurer, and that inquiry was made of them for the purpose of securing possession of it. See *Blankenship* v. *Berry*, 28 Tex. 448; *Cass* v. *New York, etc., R. Co.*, 1 E. D. Smith 522; 5 Am. & Eng. Ency. of Law 528. Judgment affirmed.