STATE OF IOWA for use of CITY OF GRINNELL, Appellee, v. B. J. CARNEY et al., Appellants.

No. 37946.

134

JANUARY 17, 1928.

REHEARING DENIED APRIL 5, 1929.

*Carr, Cox, Evans & Riley* and *Frank Bechly,* for appellants.

*Talbott & Talbott,* for appellee.

FAVILLE, J.—I.  Defendant Carney was city treasurer of the city of Grinnell for the term commencing January 1, 1924, and ending April 1, 1925.  On January 23, 1924, said treasurer  executed his official bond, with the American Surety Company as surety, in the penal sum of $50,000, the condition of said bond being that the said Carney, as treasurer, "shall promptly pay over to the person or officers entitled thereto, all money which may come into his hands by virtue of said office."  As treasurer, Carney deposited city funds in the Merchants National Bank of Grinnell, Iowa, of which he was an officer, the last of said deposits being made on October 25, 1924.  The bank closed on November 1, 1924, and there was then on deposit in said bank the sum of $61,917.  It appears that $50,000 of this sum was secured by a depositary bond executed by said bank and a surety, and that said amount has been paid.  This action is to recover the balance of said deposit, less a credit for a dividend

that has been paid by the receiver of said bank. Carney resigned as treasurer on January 22, 1925. He did not turn any of said money over to his successor.

The appellants pleaded that all the money deposited in the said bank by the treasurer was under the authority of a resolution of the city council of said city, adopted January 7, 1925, the same being as follows:

"Be it resolved by the city council of the city of Grinnell, Iowa, that the Merchants National Bank of Grinnell, Iowa, is hereby made the depository for all funds of the city of Grinnell, Iowa, coming into the hands of the treasurer of the city of Grinnell, Iowa."

The court, on motion, struck from the defendants' answer the allegation setting forth said resolution. The appellants rely upon *Officer v. Officer*, 120 Iowa 389, *School Township v. Stevens*, 158 Iowa 119, *Hanson v. Roush*, 139 Iowa 58, and similar cases, holding to the effect that, when a custodian of public funds deposits the same in a bank, he is not liable for loss unless he is negligent in selecting the depositary. Appellants contend that said resolution of the city council negatives any claim of negligence of the treasurer, in the event that funds are deposited by him in the designated depositary. The foregoing cases were decided by this court prior to the enactment of Section 660-a of Code Supplement, 1913. Said section is as follows:

"That treasurers of cities of the first and second class, cities operating under special charter and cities under the commission form of government shall, with the approval of the city council as to place and amount of deposit, by resolution entered of record, deposit all city funds in any bank or banks in the city to which the said funds belong, at interest at the rate of not less than two per cent per annum on ninety per cent of the daily balances payable at the end of each month, all of which interest shall accrue to the benefit of the general city fund; but before such deposit is made in any bank it shall file a bond for double the amount deposited with sureties to be approved by the treasurer and the city council and conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits; provided that in cases where an approved surety company's bond

is furnished said bond may be accepted in an amount of ten per cent more than the amount deposited. Said bonds shall be filed with the city clerk and action shall be brought thereon by the treasurer or the city as the council may elect.''

This statute was undoubtedly passed to meet the situation that had been created by the previous holdings of this court in the cited cases. Appellants rely upon a change in phraseology in the provisions of Sections 5651 and 5652 of the Code of 1924. Said sections of the Code did not become effective until midnight of October 27, 1924. *Clingingsmith v. Jackson Dairy Co.*, 202 Iowa 773. The last deposit having been made on October 25, 1924, the case must be ruled at this point by the statute then in force, to wit, Section 660-a of Code Supplement, 1913.

There is no question involved in this case with regard to $50,000 of the money which was deposited by the treasurer in the bank. The amount involved in this action is only the excess above the amount that was protected by the depositary bond of the bank. Appellants' contention is that, by virtue of said resolution, it was the duty of the treasurer to deposit *all* city funds coming into his hands in the designated depositary bank, and that, having done so, neither he nor the surety on his bond as treasurer can be held liable for any funds so deposited, even though they exceeded in amount the liability of the depositary bond.

It is obvious that the city council could not by resolution absolve the treasurer and his official bond from liability for funds deposited in a bank, merely by the adoption of a resolution directing the city treasurer to deposit the fund. The city council had no jurisdiction in regard to said funds, except as conferred upon it by the quoted statute. This provided that the city council, by resolution of record, could authorize the deposit of city funds in a bank, and require that, before such deposit was made, a bond must be filed for double the amount deposited, with sureties to be approved by the treasurer and the city council. The limit of the authorized deposit under this statute was necessarily covered by the provisions of the bond. In other words, under this statute, the city council could properly designate a certain bank as a depositary, and authorize the city treasurer to deposit funds in said bank to an amount protected

and covered by the depositary bond. It could not, under such statute, authorize the city. treasurer to deposit funds in said bank in excess of the amount protected by said depositary bond, or to deposit funds without any depositary bond. The council, having named the depositary and fixed the amount of the bond and approved the same, did by said act necessarily fix and limit the amount of funds that the treasurer could legally deposit in said bank. Any amount deposited by the treasurer in excess of said amount so fixed would not be protected by said depositary bond, would be in contravention of the provisions of the statute, and would be in exactly the same situation as though the treasurer had deposited the same in some other bank. It is to be observed that said statute required the city treasurer to deposit the city funds in approved depositaries where they were protected by proper depositary bonds. The statute is mandatory that the treasurer *"shall"* deposit city funds in a designated depositary where they shall be protected by a proper depositary bond. Provision is made for making such deposits in any bank or banks in the state that will accept the same on the terms and conditions of the statute, if no bank in the city will accept them. Code Supplement, 1913, Section 660-b. Therefore, if the treasurer has in his hands funds which he sees fit not to deposit in the designated depositary, he certainly must be held liable therefor, under the provisions of the statute, on his official bond. If the amount of said funds in his hands exceeds the amount that he may lawfully deposit in the designated depositary under the protection of the bond furnished by it, then the city treasurer must see to it that another depositary is designated and a new bond given, or that the amount authorized to be deposited in said designated depositary is increased to meet the new conditions, and is protected by an approved bond. The city council could not, by resolution, authorize the treasurer to deposit funds in excess of the amount protected by the depositary bond, any more than it could by resolution authorize the treasurer to deposit funds in some depositary without having the same protected by any depositary bond. It is to be observed that the statute has been amended. See Code of 1927, Section 5651 *et seq.* At this point we hold that the court did not err in striking from the appellants' answer the allegations with respect to the said resolution adopted by the city council.

II. It is contended that the court erred in striking from the amendment to the appellants' answer an allegation to the effect that the treasurer believed the bank in which he deposited said funds to be a safe depositary, and believed that the same was a solvent and safe institution for the custody of said fund, and that he was not negligent in depositing the same in said bank. As we have heretofore pointed out, the question of the negligence of the treasurer in depositing said excessive funds in said bank is not involved in this case. The statute governs the matter of deposits of said funds. The statute is mandatory, and not merely permissive. The provision is that the treasurer *"shall,* with the approval of the city council as to place and amount of deposit, by resolution entered of record, deposit all city funds in any bank or banks in the city * * *.'' It is not a question of whether the treasurer used good faith, or was or was not guilty of negligence in depositing the funds of the city in an unauthorized manner. The statute directs how city funds shall be deposited by a city treasurer. That is the sole manner provided by statute. Obedience to the statute protects the city treasurer with regard to the funds so deposited. There is no elasticity in the statute by which it can be stretched to cover funds that are not deposited according to its terms. Diligence or good faith on his part cannot excuse the city treasurer with regard to funds coming into his hands which he fails to deposit in accordance with the mandate of the statute. There was, therefore, no error in striking said amendment.

III. It is contended that the court erred in permitting the appellee to amend its petition to conform to the proof, after verdict. Upon the trial, the evidence shows that the $50,000 de-

pository bond given by the bank was the only depositary bond given by said bank. This was conceded of record by both parties. The original petition did not allege the fact that said $50,000 bond was the only depositary bond, and after verdict the appellant surety company filed a motion in arrest of judgment, setting up that the petition did not allege that there had not been an additional depositary bond given by said bank. Thereupon, by leave of court, appellee amended its petition, alleging that the $50,000 bond was the only one given, said allegation being in full accord with the concession of record in said cause.

Under such circumstances, it was not error to grant leave to amend the petition to conform to the uncontroverted proof. See Sections 11557, 11558, 11559, Code of 1924; *Halligan v. Keller*, 167 Iowa 72; *Davis v. Chicago, R. I. & P. R. Co.*, 83 Iowa 744.

IV. Error is predicated upon the admission in evidence of the testimony of a witness to the effect that a demand was made upon the appellant surety company for said fund before suit was brought. It appeared without objection that written demand had been made upon the treasurer for the payment of the money. The terms of the bond in suit required the treasurer to promptly pay over to the person or officers entitled thereto all money which came into his hands by virtue of his office. His term of office expired January 22, 1925. He did not turn over to his successor, who was entitled thereto, all the money which came into his hands by virtue of his office. This suit was instituted on the 6th day of July, 1925. No demand was necessary. Under the terms of the bond, a duty rested upon the treasurer to turn over the funds coming into his hands as treasurer, to his successor in office. This, under the allegations of the petition, he had failed to do, and demand had been made upon him therefor. The bringing of this action against the surety, in view of the terms of the bond, was sufficient demand. See *Town of Cicero v. Grisko*, 144 Ill. App. 564, at 588; *Foster v. State ex rel. City of Huntington*, 22 Ind. App. 471, and cases cited.

V. Appellants complain of the action of the court in overruling a motion for continuance. The appellee amended its petition just before the trial commenced. The petition contained an allegation which was, in effect, a charge of negligence on the part of the treasurer in depositing said funds in said bank. This allegation was withdrawn. Certainly no prejudice could have resulted to the appellants by proceeding to trial at said time. Appellees raised no new issue, but, on the contrary, eliminated one. No new proof could have been required on the part of the appellants to meet the petition as amended. There was no error at this point.

The judgment of the lower court is—*Affirmed*.

Stevens, C. J., and Morling and Kindig, JJ., concur.

Albert and De Graff, JJ., dissent.

Evans and Wagner, JJ., not participating.

Albert, J. (dissenting).—The question is whether or not, when a city treasurer deposits city money in a bank which has not been designated as a depositary, and where no depositary bond is put up, and the bank fails, the city treasurer is absolutely liable under the statute; or whether it is a question of due diligence on his part in selecting the bank in which he has deposited the money.

The first case of this character before our court was *Ross v. Hatch*, 5 Iowa (Clarke) 149. It was there held that, where the county treasurer used reasonable care and diligence in the preservation of the public funds, and the same were stolen, he was not liable for the loss. This ruling was bottomed upon the wording of the bond, which, so far as material, was, " 'to pay over promptly to the person or officer entitled thereto all money which may come into his hands by virtue of his office,' " but which also contained a provision that he would exercise diligence and care.

In *County of Johnson v. Hughes*, 12 Iowa 360, the county treasurer neglected to cancel certain warrants received by him, which were afterwards stolen from his office, without his fault or negligence. It was held that he was liable to the county for the amount thereof on his official bond.

In *District Township of Taylor v. Morton*, 37 Iowa 550, the school treasurer kept money in his residence, which was broken into and the money stolen. It was held that the treasurer was liable, and that negligence on his part was no defense.

In *District Township v. Smith*, 39 Iowa 1, the money of the district township in the hands of the treasurer was accidentally consumed by fire, without want of care and diligence on his part. The treasurer was held absolutely liable, and the claim that it was accidentally destroyed by fire, without want of care and diligence on his part, was held to be no defense.

In *District Township v. Hardinbrook*, 40 Iowa 130, the district township treasurer deposited money in a bank, taking a certificate of deposit in his own name. It was held that the treasurer's liability was absolute, and could not be varied or diminished by the cause or manner of the loss.

In *Lowry v. Polk County*, 51 Iowa 50, it was held that,

where the county treasurer deposited money in a bank, such deposit was a loan, and in violation of Section 912, Code of 1873.

In *Long v. Emsley*, 57 Iowa 11, the township clerk deposited public funds in his individual name, which was held to be a loan to the bank, and amounting to a conversion.

In *Independent District of Boyer v. King*, 80 Iowa 497, it was held that a deposit by the treasurer of a school district of its funds was contrary to law.

The sum total of the holdings of this court up to this point in its history is that, where a treasurer of any of these bodies deposits money in a bank and it is lost, he does so at his own hazard. Or, to put it in another way, the respective treasurers were, in effect, held to be insurers of the safety of the funds that came into their hands. This doctrine resulted, in many instances, in grave injustice, and this court changed front on the question of the liability of such officers under certain conditions. The first case under the new line of authorities is *Officer v. Officer*, 120 Iowa 389, where we held that an executor was warranted in leaving his trust funds with a bank for preservation.

In *Hunt v. Hopley*, 120 Iowa 695, we said:

"A trustee may take the precaution of leaving the trust funds with a bank for preservation (*Officer v. Officer*, 120 Iowa 389), and we can see no reason for denying a school treasurer the right to equal protection in placing the moneys of his district within the safe-keeping of a solvent bank, also. * * * Must he, at his peril, carry the large sums of public money coming into his keeping on his person, or stow them away at his home or place of business, thereby taking risks of loss, destruction, or larceny not to be thought of in the care of his own property? A number of courts apply precisely the same rules with respect to public officers as to trustees, and not only hold that they may make general deposits of public moneys coming into their hands, but are liable in event of loss only when failing to exercise due care and diligence. * * * We are not ready to so declare. Better that *Lowry v. Polk Co.*, in so far as holding the general deposit of money a loan, be overruled."

In that case, the treasurer was held not liable.

In *State ex rel. Carroll v. Corning State Sav. Bank*, 128 Iowa 597, we held that the receiver of a defunct bank may de-

posit the funds of his insolvent estate, as such, in the hands of a bank of good standing and repute.

In *Rhea v. Brewster,* 130 Iowa 729, where a fund was deposited with the clerk of the court, to abide the result of litigation, we reiterated the doctrine of *Hunt v. Hopley,* and held that the clerk had the right to deposit the money for safe-keeping.

In *Hanson v. Roush,* 139 Iowa 58, a school treasurer deposited money in a private bank. We there held that such deposit was not wrongful.

In *School Township v. Stevens,* 158 Iowa 119, the school treasurer deposited, in his name as treasurer, money in a bank which afterwards became insolvent. We there discussed these two lines of authority in Iowa, and said, with reference to the latter pronouncements of this court:

"It is held, in effect, in the foregoing cases, that the adoption of this method of caring for public funds, their identity being carefully preserved by separate and distinct accounts, as such, is not only permissible, but commendable. In the light of modern methods of business, it would be difficult to specify a safer method of care and custody than is thus provided. Indeed, it might be a fair question whether, in the absence of excusing circumstances, a treasurer could properly ignore such facilities and subject public funds to the risk of loss naturally incident to a personal custody of currency. Where such course is followed, we can see no reason of public policy to be subserved by declaring for a rule of absolute liability of the treasurer, notwithstanding the exercise of all diligence and the observance of every legal duty. We adhere, therefore, to the rule followed in *Hanson v. Independent District* [155 Iowa 264], supra, and foreshadowed in the cases of *Officer v. Officer, Hunt v. Hopley, Hanson v. Roush,* and *Brown v. Sheldon Bank,* cited above, and *Ross v. Hatch,* supra. In so far as the other cases cited by appellant should appear to be inconsistent herewith, they must be deemed to be overruled to that extent. The trial court therefore rightly held against the claim of absolute liability on the part of the defendant."

In the case of *Incorporated Town of Conway v. Conway,* 190 Iowa 563, the city treasurer deposited money in the bank in

the name of the "town of Conway." We there said, with reference to the conduct of the treasurer, that he had the right to deposit the funds of the town in a bank believed by him, acting as a person of ordinary prudence, to be reasonably safe and trustworthy. The contention made in that case was that the deposits were all contrary to law, relying on *District Township v. Farmers' Bank of Fontanelle*, 88 Iowa 194, and *Independent District v. King*, 80 Iowa 497, and other like decisions. With reference thereto we said, "These have been overruled by the cases previously cited;" and it was held that the deposit was not wrongful.

The substance of our later holdings, beginning with the *Officer* case, is that, when one of these officers deposits public money in a going bank which he believes to be safe and sound, and he uses reasonable diligence and prudence in selecting the bank, he is not liable for loss caused by a failure of the bank. This is the rule in this state at the present time, unless it be that, by reason of Chapter 55 of the Acts of the Thirty-fifth General Assembly, this rule is changed. The material part of this act reads as follows:

"That treasurers of cities of the first and second class, * * * shall, with the approval of the city council as to place and amount of deposit, by resolution entered of record, deposit all city funds in any bank or banks in the city to which the said funds belong, at interest at the rate of not less than 2 per cent per annum on 90 per cent of the daily balances payable at the end of each month, * * * but before such deposit is made in any bank it shall file a bond for double the amount deposited with sureties to be approved by the treasurer and the city council and conditioned to hold the treasurer harmless from all loss by reason of such deposit or deposits; provided that in cases where an approved surety company's bond is furnished said bond may be accepted in an amount of 10 per cent more than the amount deposited."

Does this enactment wholly supersede the rule that previously existed in this state with reference to the deposit of city funds? We are led to inquire what the reason was for the enactment of this statute.

It would seem, on the face of it, that it was intended to keep

the funds with some bank or banks, so that the municipality might benefit by the monthly interest provided for in said statute. There can be no question, under this section of the statute, that the city council shall designate the proposed depositories and the amount of bond, and approve the bond to be given by such depository. There can be no question that, when this has been done by the city, then the treasurer has no option whatever but to deposit the city funds, to at least the amount of the bond, with the depository thus designated; and the city treasurer would be prohibited from depositing such funds, up to the amount of the bond, in any other bank than one of the depositories thus named.

I do not think this question is debatable; and if the treasurer insisted upon depositing in some other bank, in disregard of the resolution of the town council, he does so at his own hazard, and if a loss is suffered, he is personally liable, as would be his bond.

But suppose that the city council refuses or neglects to designate a depository for such public funds,—is the treasurer compelled to carry it around in his pocket, or keep it in his home or place of business, and do this at his own hazard? Or would it be the more safe and sane rule to say, as we have said since the *Officer* case, that business sense and judgment demand that he should not do this, but should deposit it in some safe bank, using due diligence in his selection of the bank?

On the other hand, suppose that the city treasurer has more money coming into his hands, as such, than the depository bonds cover, is it possible that, if he deposits one dollar more than is covered by the depository bond, he becomes personally liable? Is he compelled to carry this surplus around on his person or keep it at his home or place of business, or would it be wiser to say that he should do as any other reasonably careful business man would do, under like circumstances, and deposit it in some bank which appears to him to be safe and sound, until such time as that the council, by resolution, shall designate another depository, or until the bonds of the designated depository have been increased sufficiently to cover the excess amount; on the happening of which event, of course, he must then deposit in accordance with the resolution of the city council?

The city council had recommended the bank in controversy, by its resolution, as a safe depository, and in pursuance of such

resolution, he deposited the money in the bank in question. The amount on deposit concededly was some $11,000 in excess of that covered by the bond; and until a new bond was required by the city council, or until one could be procured, I am of the opinion that he had a right to deposit this money in this bank.

As to what the record shows with reference to his use of due diligence in selecting the bank, I have given no attention, as I am only trying to deal with the general rule that should govern in cases of this kind. I would reverse.

DE GRAFF, J., joins in this dissent.