## GERMAN N. BANK v. N. S. FOREMAN.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF FOREST COUNTY.

Argued October 10, 1890—Decided January 5, 1891.

[To be reported.]

1. When the maker of a negotiable note, payable at a bank, has at the date of maturity a general deposit to his credit in the bank, sufficient in amount to discharge the note and not specifically appropriated to any other purpose, the bank is bound to charge the note against such deposit, in relief of the maker's indorsers: Commercial N. Bank v. Henninger, 105 Pa. 496.

2. A notice from the maker to the bank forbidding the application of his deposit to the note, will not justify the bank in neglecting so to charge it at maturity, and will not prevent such neglect from having the effect of discharging the indorsers, if, notwithstanding the notice, the money remained to the credit of the maker, without a specific appropriation.

3. Such a notice, followed by an agreement on the part of the bank with the depositor, before maturity of the note, not to charge it against the deposit, will not convert the deposit into a special one, and render the ruling in Bank v. Speight, 47 N. Y. 668, quoted in Commercial N. Bank v. Henninger, supra, applicable, the money still remaining in the depositor's control and subject to his check

Before PAXSON, C. J., STERRETT, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 169 October Term 1890, Sup. Ct.; court below, No. 3 December Term 1889, C. P.

On September 28, 1889, the German National Bank of Allegheny brought assumpsit against N. Smith Foreman, as an indorser of a promissory note for $1,126.63, dated March 27, 1889, at four months, drawn to the order of the defendant, and indorsed by the defendant and by Jacob Kepler. The defendant pleaded non-assumpsit, and payment with leave.

By agreement of the parties, the case was tried without a jury, under the act of April 22, 1874, P. L. 109, before BROWN, P. J., who, after hearing and argument, filed the following decision:

Decision of Court below.

### FINDINGS OF FACT.

Under date of March 27, 1889, John Shoup made his promissory note payable to the order of the defendant for the sum of $1,126.63, payable at the bank plaintiff, four months after date, without defalcation, for value received. The note was given by Shoup to defendant for timber. It was indorsed by defendant and by Jacob Kepler, the last named being the second indorser, and was discounted by the plaintiff. It was not paid at maturity, but was duly presented for payment, and due notice of demand and non-payment was given to defendant.

John Shoup was a depositor in the bank plaintiff, and the balance to his credit at the maturity of the note was $5,364.05, and for several days after the maturity of the note his deposit exceeded the amount of the note.

After the discount and before the maturity of the note, Shoup, alleging misrepresentation by the defendant as to the quality of the timber for which it was given, notified the bank not to pay it out of his funds, and the bank agreed that it would not apply Shoup's deposit to the payment of the note.

This suit was brought by the plaintiff at the request of Shoup, who gave to the plaintiff a bond dated November 18, 1889, a copy of which is attached hereto and is made part of the findings of fact.

[Here followed the bond referred to, which was in the sum of $2,256.08, conditioned for the payment by the obligor to the obligee of $1,128, with interest from July 30, 1889, together with all costs, attorney's fees and commissions, or other expense, incurred by reason of a suit brought by the obligee at the obligor's request against N. Smith Foreman, to recover from him the above amount as indorser of a promissory note made by the obligor, due July 30, 1889, and now owned by the obligee, if the said obligee could not recover from the said defendant. The decision then proceeded :]

### CONCLUSIONS OF LAW.

The court is requested to find for the plaintiff :

1. The court is asked, if it finds from the evidence in the case that before and prior to the maturity of the note on which this suit was brought, the maker of the note notified the bank, the plaintiff above named, not to charge the note to his account and pay the same from his deposits, and the bank

agreed that it would not, that the finding shall be for the plaintiff.

Answer: Affirmed.

2. That under all the evidence offered by the plaintiff and defendant, the finding should be for the plaintiff.

Answer: Affirmed.

The defendant requests the court to find:

1. If the maker of the note had, at and for several days after the time of the maturity thereof, on deposit and to his credit in the plaintiff bank, a sum of money greater than the amount of the note, which sum was not set apart to any special purpose, but was subject to his check generally, and the plaintiff, instead of charging the note against such deposit, accepted from the maker the bond in evidence, and, at the maker's request and at his expense, instituted this suit against the indorser, the plaintiff is not entitled to recover.

Answer: Refused.[1]

We are of the opinion that Bank v. Speight, 47 N. Y. 668, mentioned approvingly by Justice PAXSON, in the case of Commercial N. Bank v. Henninger, 105 Pa. 496, contains a statement of the rule that determines this case. It is there said that if, before the maturity of paper held by a bank against a depositor, an arrangement is made by which the bank agrees to hold the deposit for a specific purpose, and not to charge the note against it, the bank may be regarded as a trustee and the deposit special. In such a case, in the absence of fraud or collusion, an indorser on such paper has no right to require the appropriation of the deposit towards the payment of the paper on its maturity. Although not the precise point on which the decision in the case of the Bank v. Henninger turned, Justice PAXSON takes occasion to say: "It must be conceded that if the deposit had been special, or, if previous to the maturity of the note any arrangement had been made between the depositor and the bank, by which the bank had been forbidden to apply the money in its hands to the payment of these notes, the indorser would not be discharged." Unless, under the facts found, the defendant was discharged from his liability to the bank, it had the right to pursue Shoup and either or both indorsers, until satisfaction was obtained; and the fact that Shoup indemnified it from the cost and expenses of this suit

Opinion of Court below.

against the defendant, does not exempt defendant from his legal liability to plaintiff.

Unless exceptions to the findings of fact or conclusions of law are filed within thirty days after service of notice of this decision on the parties or their attorneys, the prothonotary will enter judgment against the defendant and in favor of plaintiff for the sum of $1,185.22, with interest from June 12, 1890.

Exceptions been having filed, inter alia, to the refusal of the defendant's point, the court, BROWN, P. J., filed the following opinion:

The defendant's exception to the negative answer to his first and only point is sustained. [Abstractly considered, the point is now affirmed. But this does not avail the defendant, the facts found being that before the maturity of the note the bank agreed with Shoup that it would not apply his deposit to the payment of the note. Such being the fact, I think Shoup's deposit must be regarded as special, to the extent at least that the bank was thenceforth under no obligations to apply the same in relief of the defendant.] [2]

While it is true that the decision in the Commercial N. Bank v. Henninger, 105 Pa. 496, and Bank v. Speight, 47. N. Y. 668, were upon questions of fact other than in the case before me, the opinions and reasoning seem applicable. In Commercial N. Bank v. Henninger, Justice PAXSON says: " There is no doubt as to the right of a depositor to control his deposit up to the point where the rights of others attach. He may draw it out by his check; he may apply it to a particular purpose, by making it a special deposit or by special directions communicated to the bank." The defendant's first, third, fourth and fifth exceptions are dismissed, and the prothonotary is directed to enter judgment in accordance with the decision previously filed.

—Judgment having been entered, the defendant took this appeal, assigning for error, inter alia:

1. The refusal of defendant's point.[1]

2. The ruling upon the defendant's exception.[2]

*Mr. C. Heydrick* (with him *Mr. Frank E. Bible*), for the appellant:

The case differs in no material respect from Commercial N. Bank v. Henninger, 105 Pa. 496. In that case, this court was careful to guard against inferences that might be drawn from the decision, antagonistic to other adjudged cases, especially Bank v. Speight, 47 N. Y. 668; and the court below, in the case now at bar, relied upon what was there said, by way of distinguishing Bank v. Speight, as equivalent to a ruling upon a state of facts similar to that now before the court. But the facts in Bank v. Speight were very different from those of the present case. Here, the deposit was in no sense special; there was no appropriation of it to any special purpose, and the indorser of the note did not consent to or acquiesce in the agreement between the maker and the bank. No matter what agreement had been made between the bank and the maker, the former had it in its power, when the note matured, to realize its debt by set-off against the deposit. It could not relinquish its right so to do, without discharging the indorser.

*Mr. T. J. Van Giesen* (with him *Mr. E. L. Davis*), for the appellee:

1. The direction found by the court to have been given by Shoup to the bank, prior to the maturity of the note, forbidding the application of his deposit thereto, and the bank's agreement not to make such application, materially distinguish this case from Commercial N. Bank v. Henninger, 105 Pa. 496. The ingeniously and cunningly drawn point of the defendant, left out the material fact of the agreement, which was fatal to his case. The decision of the court below, in this case, is strictly in accordance with the language of this court in Commercial N. Bank v. Henninger, supra, and comes clearly within the ruling in Bank v. Speight, 47 N. Y. 668. The ruling point, on which the indorser in the case last mentioned was held liable, is just the point on which the case at bar hinges.

2. When the plaintiff was peremptorily forbidden by Shoup to apply his funds to the note, and agreed not to do so, the deposit became a special one, and the bank was bound both legally and morally by its agreement. In no phase of the case was the bank morally bound to charge the note to the depositor. It had the legal and moral right to choose between the drawer and the indorsers, in enforcing its collection, and under

an equitable view of all the facts of the case the choice was very properly made. The bond given to the plaintiff by Shoup should have no weight in the disposition of this case. While a collateral security of a higher grade might operate as payment, as regards an indorser on the original paper, this bond, which was not given as collateral security for the note, but simply as an indemnity against loss by reason of this suit, had no relevancy upon the trial.

OPINION, Mr. CHIEF JUSTICE PAXSON:

The plaintiff bank had discounted the note in controversy, and was therefore the holder. At the time the note matured, John Shoup, the maker, had on deposit with the bank more than sufficient to pay it; but Shoup, conceiving that he had a defence as against the payee, notified the bank not to charge it off against his account at maturity, and at the same time gave the bank a bond of indemnity to secure it in case it failed to recover against the indorser. Being thus indemnified, the bank did not charge the note to Shoup's account, and brought this suit against the payee, who was of course indorser. The latter defended upon the ground that he was discharged as indorser, by reason of the failure of the bank to collect the note from the funds of the maker in its hands. The court below held that the indorser was liable, and entered judgment against him for the amount of the note.

The case is ruled by Commercial N. Bank v. Henninger, 105 Pa. 496. It was there held that "where a bank is the holder of a note payable at the banking house, and upon its maturity the maker has a cash deposit in said bank exceeding the amount of the note, which deposit is not specially applicable to a particular purpose, the bank is bound to charge up the amount of the note against the deposit. In such case, the note is in effect a draft on the bank in favor of the holder, and in discharge of the indorser." The case in hand comes directly within this ruling. The money was there to the credit of the maker; it was not a special deposit, nor had it been specifically appropriated to any other purpose. The maker could have drawn his money out the day before the note matured; he might have turned it into a special deposit, or he might have appropriated it to the payment of some other note. As was said

Opinion of the Court.

in Commercial N. Bank v. Henninger, supra: "There is no doubt as to the right of the depositor to control his deposit up to the point where the rights of others attach. He may draw it out by his check; he may apply it to a particular purpose, by making it a special deposit, or by special directions communicated to the bank."

The learned judge below appears to have been misled by the following passage from the opinion in the case referred to: "It must be conceded that if the deposit had been special, or, if previous to the maturity of the note, any arrangement had been made between the depositor and the bank, by which the bank had been forbidden to apply the money in its hands to the payment of these notes, the indorser would not be discharged." The learned judge below has omitted the sentence immediately following, which explains what was meant by this language: "As was held in Bank v. Speight, 47 N. Y. 668, 'if before the maturity of the paper held by a bank against a depositor, an arrangement is made by which the bank agrees to hold the deposit for a specific purpose, and not to charge the note against it, the bank may be regarded as a trustee, and the deposit special. In such a case, in the absence of fraud or collusion, an indorser upon such paper has no right to require the application of the deposit towards the payment of the paper upon its maturity.'" Considering the above paragraph as a whole, it will be seen that it means merely that where a depositor has made a special application or appropriation of his balance, and so notifies the bank, the latter cannot charge off the note against his deposit. This arises from the fact that a man may do what he will with his own so long as he retains control of it. Here, the depositor retained full control over his deposit; made no appropriation of it, but retained it subject to his check; then, by a collusive arrangement with the bank, which was the holder, induced the latter to violate its duty to the indorser. It was an arrangement which the bank had no right to make. That the deposit did not, in any sense, become a special one, is shown by the fact that it remained in the bank subject to Shoup's check. Being so subject, it was the duty of the bank to charge off the note against it, and by its failure to do so the indorser is discharged.

Judgment reversed.