CHAS. T. OFFICER, Administrator of the Estate of Thomas
Officer, Deceased, Appellee, v. OFFICER AND PUSEY,
JOHN BERESHEIM AND L. T. MURPHY, Receivers, J. J.
STEWART, as Executor of the Estate of A. Cochran,
Deceased, Intervener, Appellant.

Executors: DEPOSIT OF TRUST FUNDS. An executor may right-
1   fully deposit trust funds to the account of the estate in a
solvent bank.

General Deposit.   Where an executor deposits trust funds with a
2   bank, which are subject to check, there being no agreement
to return the identical deposit or to apply the same to any
specific purpose, the deposit is a general one.

Trust Funds: DEPOSIT: PREFERENCE. Where an executor makes a
3   general deposit of trust funds in a solvent bank, neither he
nor the *cestui que* trust, in case of a failure of the bank, has
any preference over other creditors, though the bank knew
the character of the deposit.

*Appeal from Pottawattamie District Court.*—HON. A. B.
THORNELL, Judge.

FRIDAY, MAY 15, 1903.

APPLICATION in a receivership proceeding for the al-
lowance and establishment of a claim filed by the inter-
vener, as executor of the estate of A. Cochran, deceased,
as a preferential one.   The trial court denied the applica-
tion, and intervener appeals.—*Affirmed.*

*C: G. Saunders* and *J. J. Stewart* for appellant.

*Harl & McCabe* for appellee.

DEEMER, J.—The firm of Officer & Pusey was a part-
nership doing a general banking business in the city of
Council Bluffs..   On September 17, 1900, it went into the

hands of receivers, and, on October 16th of the same year, intervener, as executor of the estate of A. Cochran, deceased, filed his claim against Officer & Pusey with the receivers, for the sum of something more than $2,000, which he had deposited in the bank to the credit of "the estate of A. Cochran, deceased. J. J. Stewart, executor." He alleges that he notified the bank that this was a special trust fund which should at all times be kept on hand and subject to the order of court, and that said Officer & Pusey had notice of the character of the funds. He further pleaded that the funds in the hands of the receivers were augmented to the amount of the deposit, and that the same, or an equal amount thereof, was still in their hands, and he asked that his claim be allowed and established as a preferred one. The facts are not in dispute. It was agreed that the claim should be treated as if made in the name of the *cestui que* trust; that J. J. Stewart was executor of the estate of A. Cochran, and as such deposited the money claimed by him, as stated in his application; and that such deposits were made on and after March 31, 1900, with the knowledge of the bank that they were trust funds held by Stewart. The deposits were made in good faith, and, when made, the bank was reputed to be solvent and sound. When the bank passed into the hands of the receivers there was more than $100,000 of assets, which was more than sufficient to pay all preferred claims; and from the time the deposits were made, down to the time of the appointment of the receivers, the bank had more than $100,000 in cash. Stewart never had an order of court to make the deposits, but acted upon his own judgment and responsibility, for the purpose of preserving and securing the funds. From time to time he drew checks in his official capacity against the funds, which were duly honored and paid.

The first question of law to be determined on this state of facts is, was the deposit wrongful? If so, and

the bank had notice of the character of the funds, there is **1. EXECUTORS:** no doubt that the claim should be given a **deposit of trust funds.** preference. *Ind. Dist. v. King*, 80 Iowa, 498; *Davenport Plow Co. v. Lamp*, 80 Iowa, 722; *Dist. Tp. v. Bank*, 88 Iowa, 194; *In re Knapp & Co.*, 101 Iowa, 488; *Jones v. Chesebrough*, 105 Iowa, 303. An executor must exercise that degree of care and prudence with reference to funds coming into his hands that ordinarily prudent men exercise in regard to their own affairs, and, in the absence of statute preventing, they may deposit the same in banks of good standing and reputed solvency. *Barney v. Saunders*, 16 How. 535 (14 L. Ed. 1047); *King v. Talbot*, 40 N. Y. 76. Indeed, it seems to be generally held that a trustee who has deposited funds to a trust account in a reputable bank or banking house is not liable for any loss which may occur through failure of the bank. *In re Law's Estate*, 144 Pa. 499 (22 Atl. Rep. 831, 14 L. R. A. 103); *Norwood v. Harness*, 98 Ind. 134 (49 Am. Rep. 739); *Jacobus v. Jacobus*, 37 N. J. Eq. 17; *People v. Faulkner*, 107 N. Y. 488 (14 N. E. Rep. 415). Of course, the deposit must be made to the trust account. If the executor or trustee makes a deposit of trust funds in his individual name, or mingles them with other funds, he is not relieved of responsibility should the funds be lost. *Williams v. Williams*, 55 Wis. 300 (12 N. W. Rep. 465, 13 N. W. Rep. 74, 42 Am. Rep. 708); *Allen v. Leach* (Del. Orph. Ct. Rep.) 29 Atl. Rep. 1050; *Corya v. Corya*, 119 Ind. 593 (22 N. Rep. 3). Such act is in itself a conversion of the funds. *Ivey v. Coleman*, 42 Ala. 409.

Finding, then, that the executor was authorized to make a deposit of the money belonging to the estate, the next question is the nature of the deposit. Deposits are **2. GENERAL deposit.** divided into general, special, and specific; and, in the absence of proof to the contrary, every deposit is presumed to be general. In cases of general deposit, the money deposited is mingled with other

money of the bank, and the entire amount forms a single
fund, from which depositors are paid. The relation of
debtor and creditor is created, and, in the event of failure
of the bank, all such creditors stand on an equality.
*Lowry v. Polk County*, 51 Iowa, 50; *Long v. Emsley*, 57
Iowa, 11; *Commonwealth Bank v. Wister*, 2 Pet. 318( 7 L.
Ed. 437); *In re Hunt*, 141 Mass. 515 (6 N. E. Rep. 554);
*Briyn v. Bank*, 9 Com. 413. A general deposit differs
from a loan in that the money is left with the bank for
safekeeping, subject to order, and payable, not in the
specific money deposited, but in an equal sum. It may or
may not bear interest, and, so long as the relation is simply
that of debtor and creditor, no loan is created. *In re
Law's Estate, supra.* A special deposit is created where
the money is left for safekeeping and return of the ident-
ical thing to the depositor  And a specific deposit exists
when money or property is given to a bank for some
specific and particular purpose, as a note for collection,
money to pay a particular note, or property for some
specific purpose. *People v. Bank*, 96 N. Y. 33; *Brahm v.
Adkins*, 77 Ill. 263; *Peak v. Ellicott*, 30 Kan. 156 (1 Pac.
Rep. 499, 46 Am. Rep. 90); *German Bank v. Foreman*, 138
Pa. 474 (21 Atl. Rep. 20, 21 Am. St. Rep. 908). The deposit
made in this case was not a special one. The bank did
not receive it upon a promise to keep the identical money
and to return it to the executor. It was not specific, for
the bank had the right to mix the funds with other money
received by it, and obligated itself simply to honor and
pay the executor's checks. It did not agree to hold the
same for the parties entitled thereto, but it was at all
times authorized to pay out the same on checks signed by
the executor, and was not bound to see that the money
received thereon went to those who were entitled to re-
ceive it. Many attempts have been made to secure prior-
ity in such cases on the theory that the deposit is specific,
but they have uniformly failed. See *Fletcher v. Sharpe*,

.108 Ind. 276 (9 N. E. Rep. 142); *McLain v. Wallace*, 103 Ind. 562 (5 N. E. Rep. 911); *Alston v. State*, 92 Ala. 124 (9 South. Rep. 732, 13 L. R. A. 659); *Henry v. Martin*, 88 Wis. 367 (60 N. W. Rep. 263).

We have found that the deposit in this case was authorized, and that it was general in character, and the question yet remains, may the executor or his *cestui que* trust

*3.* TRUST funds: recover the deposit as a preferred claim? The deposit: preference. mere fact that he is a trust fund creditor does not give him this right. Equality is regarded as equity in such cases. He is simply a creditor of the bank, and has no peculiar claim or right over other creditors. *Ringo v. Field*, 6 Ark. 43; *Fletcher v. Sharpe*, supra; *Shaw v. Bauman*, 34 Ohio St. 25; *Paul v. Draper*, 158 Mo. 197 (59 S. W. Rep. 77, 81 Am. St. Rep. 296); *Nat'l Bank v. Millard*, 10 Wall. 153 (19 L. Ed. 897). In *Fletcher v. Sharpe*, _supra_, it is said: "There is no question that the fund was properly deposited. * * * When deposits are received, unless they are special, they belong to the bank as a part of its general funds, and the relation of debtor and creditor arises between the bank and the depositor. This is equally so whether the deposit is of trust money or of funds which are impressed with no trust, provided the act of the depositor is no misappropriation of the funds. If, in receiving a trust fund, a bank acted with knowledge that it was taking the fund in violation of the duty of the trustee, the rights of a *cestui que* trust might be different. * * * In this case, where no impropriety is imputed to the bank in receiving the money, it becomes the debtor of the petitioner, and its debt to them was of the same character as its debt to any other depositor, and must be paid in the same proportion. The rights of other creditors stand on a level with those of the petitioners, and are to be guarded and protected by the court with the same vigilance." This is manifestly sound doctrine, and does not in any manner controvert the rule that a *cestui que* trust may follow

trust property which has been misapplied or misdirected by a trustee into the hands of anyone who is not an innocent purchaser for value. Generally speaking, equity will follow a trust fund through any number of transmutations, and preserve and protect it for the real beneficiary, so long as it can be identified and followed; and no court has gone farther than our own in this respect. But where the property has rightfully been disposed of by the trustee, and title has passed from him, the *cestui que* trust will not be permitted to reclaim the same. Hence the necessity for determining the rightfulness of the deposit. When it is once determined that the deposit was rightful, the case assumes the same aspect as if the *cestui que* trust had expressly authorized it. Had he done so, of course he could not follow the property into the hands of the receivers. In virtue of the power conferred upon him by law, the executor deposited the money in the bank, and thus became the bank's creditor for the amount of the deposit. The money was properly mingled with other funds of the bank, and lost its distinctive character as trust funds. The bank became obligated to return a like amount to the executor, or to honor his checks issued against the deposit. In other words, it became the debtor of the trustee. And, as said in *Bradley v. Chesebrough*, 111 Iowa, 126, referring to *Cavin v. Gleason*, 105 N. Y. 262 (11 N. E. Rep. 504), "that plaintiff was a trust creditor does not of itself entitle him to preference over other creditors." The exe cutor had the right to make the deposit, and the bank had an equal right to use it in its business in the ordinary way. The fund stood on the same footing as any other general deposit. *McAfee v. Bland*, 11 Ky. 1 (11 S. W. Rep. 439).

The case is easily distinguishable from cases where the deposit is wrongful, for there the relation of debtor and creditor does not exist; at any rate, the *cestui que* trust is not bound by such a deposit. It is also very different from those cases where a bank, with notice of the trust

character of a deposit, attempts to apply it on a debt due it by the trustee. In such cases, the *cestui que* trust may recover the amount so misapplied from the bank. It is doubtless true, also, that the *cestui que* trust may recover from a solvent bank the amount of a deposit by another to his account as trustee, but none of these rules are applicable here, for the reasons that the deposit was rightful, the relation of debtor and creditor was created, and the entire assets of the bank are now in the hands of trustees for an equitable and proper distribution. There is no reason, then, for preferring one creditor over another, and surely none will be preferred simply because he is what might be called a trust fund creditor.

In *Cavin v. Gleason*, 105 N. Y. 256 (11 N. E. Rep. 504), relied upon by appellant, a trustee who had wrongfully dissipated and lost a trust fund made an assignment for the benefit of creditors and the *cestui que* trust sought to have a preferential claim established out of the assets of the trustee. The claim was denied, because the *cestui que* trust could not show that the funds were included in the assets, either in the original or a traceable form. The court there said: "It is clear that a trust creditor is not entitled to a preference over general creditors of an insolvent merely on the ground of the nature of his claim; that is, that he is a trust creditor, as distinguished from a general creditor. * * * The equitable doctrine, that as between creditors equality is equity, admits, so far as we know, of no exception founded on the greater supposed sacredness of one debt, or that it arose out of a violation of duty, or that its loss involves greater apparent hardship in one case than another, unless it appears, in addition, that there is some specific, recognized equity, founded on the relation of the debt to the assigned property, which entitles the claimant, according to equitable principles, to preferential payment. If it appears that trust property specifically belonging to the trust is included in the assets, the court,

doubtless, may order it to be restored to the trust. * * *
This rule simply asserts the right of the true owner to his
own property." This rule was approved in *Bradley v. Chese-
brough, supra.* It manifestly has no application where the
trustee has rightfully disposed of the trust property, and
the *cestui que* trust is attempting to enforce a preferential
claim against the debtor for that property.

In the case of *Jones v. Chesebrough, supra,* it was as-
sumed, without deciding the point, that money rightfully
deposited might be followed into the hands of an assignee
of an insolvent bank. But as the case turned on the
claimant's inability to trace his property, there was no
necessity for deciding the other point, and that case
should not be regarded as an authority in support of in-
tervener's claim.

None of the cases cited by appellant reach the exact
point for decision here, and we have been unable, after a
somewhat laborious search, to find any that does sustain
his contention. On the other hand, there is abundant
authority for the positions we have taken, which are to the
effect that the deposit was rightful, was general in char-
acter, and that the executor, or the estate which he repre-
sents, is a creditor of the bank, having no peculiar equities
over those of any other creditors, and consequently is not
entitled to have his claim established as a preferential one.

The ruling of the district court was correct, and it is
AFFIRMED.