## IN RE ESTATE OF W. M. WORKMAN.

## IN RE ESTATE OF MAY S. WORKMAN.

**EXECUTORS AND ADMINISTRATORS:** Settlement—Loss of Bank Deposits. An administrator may, on final report, be allowed credit for estate funds deposited by him in his official capacity, in good faith, and without negligence, and lost because of· the subsequent insolvency of the bank.

*Appeal from Greene District Court.*—M. E. HUTCHISON, Judge.

### DECEMBER 11, 1923.

APPEAL from an order overruling objections to the final report of the administrator in one case and the executor in the other. The two cases were consolidated, and submitted together. Two of the residuary legatees under the will, objectors, appeal.—*Affirmed.*

*Baker & Doran,* for appellants.

*Wilson & Harris,* for appellee.

PRESTON, C. J.—F. J. Harned, as administrator of the W. M. Workman estate, deposited in the City Bank of Jefferson, Iowa, $242.93. The bank was a private bank, owned by M. G. McDuffy. Harned, as executor of the May S. Workman estate, also deposited a somewhat larger amount in the same bank. The money was deposited in his official capacity, as administrator in one estate and executor in the other. Thereafter, the

bank became insolvent, and the money was lost. In his final reports, Harned asked to be credited with the money so lost. The credit was allowed, and the reports approved.

Appellants concede that the real issue involved is whether or no Harned should be required to account for money belonging to said estates which was so lost. It is the contention of appellants that, because of the willful placing of said money belonging to said estate in said bank, knowing that it was insolvent, or because of the gross negligence on the part of the administrator in not knowing that the bank was insolvent, he should be required to account.

We think that, under the evidence, the claim as to willfulness and gross negligence is not sustained. It is largely a question of fact. Appellee cites authorities of this court holding that the appeal is not triable *de novo* here, and that the finding of the trial court has the force of a jury verdict. On the other hand appellants cite cases where a law action tried as in equity is triable *de novo*. The instant case was not so tried.

Omitting the history of the two estates, the will contest which was appealed to this court, the foreclosure of a mortgage, the amount of which was disputed, and other difficulties and delays, and referring only to the evidence bearing on the question before us, it appears that Harned had the title of assistant cashier in the bank. Much is made of this circumstance by appellants. But it appears that, while he had that title, he was, in reality, in a subordinate position. He did not have any control over the affairs or direction of the affairs of the bank. The average deposits at the bank during the time he was connected with it, some two or three years, were about $600,000. There were 600 or 700 customers, on an average. During the time he was in the bank, no inventory or ascertainment of its condition was made. The custom of the bank was to carry loans to customers as overdrafts, instead of in notes. As said, Harned had his own money on deposit in the bank. He did not mingle the money of these estates with his own. He drew no interest or other gain from the estate money in any way. The bank was reputed to be solvent, and appellee believed it so, up to the afternoon of the day before the general assignment. Up to the closing of the bank, there had been no run, deposits were being

made in the usual way, and deposits had not been withdrawn, other than in the usual, ordinary course of business. At about the time of the assignment, or shortly before, McDuffy applied to a Chicago bank for a loan to meet checks which were coming in, and which the bank was unable to pay. The loan was refused about 3 o'clock of the afternoon before the assignment. The bank was not open for business after the receipt of a telegram from the Chicago bank at the time stated. Appellee testifies that he would have drawn out the money in these estates if he had known or believed, prior to the bank's failure, that it was insolvent. Up to the time of the failure, no one had made any demand on appellee for distribution or for a closing up of either estate.

This evidence is practically undisputed. The failure was in July, 1920. Without going into the evidence in further detail, we think that the court properly found that appellee acted in good faith, and exercised ordinary diligence.

Appellants cite 24 Corpus Juris 50, and 11 Ruling Case Law 150, and cases from other jurisdictions. The rule stated is substantially this:

"In selecting a bank for the deposit of trust funds, the trustee is bound to exercise that degree of care which prudent men use in the direction of their own affairs. He may be held responsible for the failure of a bank in which he has deposited moneys of the estate when it was weak and this fact was known to the trustee, or might have been known by the exercise of ordinary prudence and diligence. The question in all such cases is, Was the trustee reasonably prudent and diligent in making or continuing the deposit?" 11 Ruling Case Law 150.

Corpus Juris, supra, states the rule thus:

"It is proper for the executor or administrator, for the purpose of safely keeping the funds of the estate during administration, to deposit the same in a bank, and indeed under some statutes the representative is required, or the court is empowered to order him, to do so. If the funds are so deposited and due care is used in selecting the depositary, the representative is not necessarily responsible for a loss resulting from the subsequent failure of the bank, the test being whether he has exercised such care as men of common prudence ordinarily exer-

cise in their own affairs; but he is liable where the bank was reputed of doubtful solvency, and by the exercise of reasonable diligence the personal representative might have known it. The representative should make the deposit with a designation of his fiduciary capacity, and if the deposit is made in his individual name, without any designation of the trust, he is liable for any loss which results from such disposition of the funds, regardless of any question of negligence or intention in making the deposit in such form."

We find this doctrine in 24 Corpus Juris 123:

"Executors and administrators are not insurers, nor will they be chargeable with the loss or depreciation of the assets where they have acted in good faith and with due prudence and diligence in the care and management of the estate, but they are liable for losses which are the consequence of bad faith or the want of due prudence and diligence. The circumstances of each case must be considered in determining whether the representative has acted in good faith and with such prudence and diligence as to relieve him from liability for loss, and as his duty is active, and not passive, a negligent failure to act may charge him with liability."

To the same effect, see *Officer v. Officer,* 120 Iowa 389, 391; *In re Estate of Ring,* 132 Iowa 216, 222. See, also, *Incorporated Town of Conway v. Conway,* 190 Iowa 563, 565.

We are of opinion that the ruling of the trial court was correct.—*Affirmed.*

EVANS, ARTHUR, and FAVILLE, JJ., concur.