No. 10,894.

THOMPSON, ADMINISTRATOR, v. ORCHARD STATE BANK, ET AL.

Decided July 7, 1924.

Action to recover the amount of a time deposit certificate as a preferred claim against an insolvent bank. Judgment for plaintiff as a general depositor.

*Affirmed.*

1. BANKS AND BANKING—*Administrators—Deposits.* An administrator deposited funds of the estate in a bank, receiving a certificate of deposit therefor. The bank became insolvent. In an action to recover judgment on the certificate as a preferred claim, it is held if the deposit was rightful, plaintiff was not entitled to a preference over general depositors in the bank.

2. EXECUTORS AND ADMINISTRATORS—*Investment of Funds—Bank Deposit.* Where an administrator could not withdraw from a bank, funds evidenced by time certificates of deposit issued to the decedent, because payment was not due, and in lieu thereof agreed to, and did take a new certificate for the amount on deposit, it is held that his act was not unlawful, unauthorized or wrongful, and not in violation of § 5269, C. L. '21.

*Error to the District Court of Weld County, Hon. Neil F. Graham, Judge.*

Mr. HERBERT M. BAKER, for plaintiff in error.

Mr. WALTER E. BLISS, for defendants in error.

*Department Three.*

MR. JUSTICE SHEAFOR delivered the opinion of the court.

SUIT brought by plaintiff in error as administrator of the estate of Theddy Moynihan, deceased, against defendants in error, to recover the sum of $4,694.14, the amount of a certificate of deposit, praying that the same be declared a special deposit, and that defendant commissioner be ordered to pay the amount of the certificate, with interest, as a preferred claim. Moynihan died, intestate, January 1, 1922, having on deposit in defendant bank at the time of his death, the following sums of money: $250.94 on open checking account; $4,273.65 evidenced by certificate of deposit, dated April 9, 1921; $702.56 evidenced by certificate of deposit dated May 6, 1921, and $520 evidenced by certificate of deposit dated October 21, 1921. These certificates of deposit were due in one year after their respective dates and bore interest at the rate of 5 per cent per annum.

On January 3, 1922, the plaintiff as administrator of the decedent's estate, withdrew from the defendant bank, the open checking account of $250.94, but could not obtain payment of the sums represented by the certificates of deposit because the same were not due. About January 10, 1923, the defendant bank became insolvent, and defendant McFerson, as state bank commissioner, took possession of its assets and property and proceeded to settle its affairs. Sometime prior to March 1, 1922, after plaintiff had been negotiating with the officers of the bank for a surety bond to secure the payment of the certificates of deposit when due, the plaintiff and the officers of the defendant bank entered into an agreement in substance and effect, that the bank would pay plaintiff $500 on the certificates and would issue a new certificate for the balance $4,694.14, to become due in 10 months, or January 1, 1923, to bear 5 per cent interest per annum, with a guaranty to be written on the back of the certificate signed by the directors of the bank, and that if the plaintiff needed any part or all the money,

at any time, it would be forthcoming; that if the money was demanded and paid before the due date, no interest was to be paid, plaintiff also agreeing to allow the money to remain in the bank as long as possible and felt safe in so doing, the plaintiff stating that his purpose was to get what security he could and to accommodate the bank people. Pursuant to that agreement the bank issued and delivered to plaintiff a certificate of deposit in words and figures following:

"Certificate of deposit not subject to check".

Orchard, Colo., March 1st, 1922.

No. 424.

This certifies that Wm. Hall Thompson, Public Administrator

(Teddy Moynihan; Esta

Has deposited with the Orchard State Bank

82-367                                                                $4694.14

Forty-six hundred ninety-four dollars fourteen cents, payable to the order of himself in current funds TEN months after date with interest to maturity only at the rate of five per cent. per annum upon the return of this certificate properly endorsed.

John Mannhalter, Cashier."

On the back of said instrument appears the following endorsements:

"We personally guarantee payment of this certificate with interest.

Hattie B. Girardot,<br>
Wm. H. Butters,<br>
H. M. Kuhn,<br>
H. W. Young."

It is admitted that the amount sued for is correct and that it has not been paid.

The trial court found for the plaintiff for the amount of the certificate and rendered judgment accordingly, but declined to impress a trust upon any of the assets of the bank in the hands of the commissioner for the payment of the judgment. The plaintiff brings the case here.

Plaintiff's position is, that the evidence impressed the deposit with a trust, making it a special deposit and preferred claim against the bank, but that irrespective of the facts and circumstances established by the evidence, the law impresses a trust on time deposits of an administrator of estate funds, when the bank has notice of the trust nature of the funds, and especially so if such deposit is unauthorized or unlawful.

The plaintiff argues that the deposit in question was not a mere general one; that it was a time deposit in the nature of a loan, bearing interest, the certificate in the nature of a promissory note, and placing the fund wholly out of the control of the trustee until the maturity of the loan; that this was beyond the power of the trustee under general legal principles, and supported by *Smith v. Fuller*, 86 Ohio St. 57, 99 N. E. 214, L. R. A. 1916C, 6, Ann. Cas. 1913D, 387; that whether that proposition be correct or not, nevertheless under C. L. 1921, § 5269, it is unlawful for an administrator to invest estate funds by depositing them in a bank on time certificates of deposit, and therefore, the deposit was unlawful, unauthorized, and wrongful, and being so, the fund claimed should be given a preference.

It is true that the court in *Smith v. Fuller, supra,* held as contended for by plaintiff, that is, that the trustees were without power to make a mere general deposit of trust funds, in other words, without power to loan out the trust money without an order of court, and that "it must be presumed that the trustees and the bank officers intended these deposits to be special rather than general, and that in such case the relation of mere debtor and creditor did not arise." In passing upon the question as to whether the fund had been kept in such a way as to authorize a court of equity to engraft a trust upon it, the court said: "The deposits were in the name of the persons as trustees; and, as we have found, the character of trust money was thus stamped upon them; and there was at all times after the first deposit and until the assignment, funds in the vaults of the bank more than sufficient to satisfy the certificates."

And further held that for the bank to have used it would have been a violation of the trust, and that the bank used it would not be presumed in the absence of evidence to that effect. The court quoted with approval the following from *Massey v. Fisher,* 62 Fed. 958: "The fact that the money was not marked, and by a mingling with other funds of the bank, lost its identity, does not affect the right to recover in full, if it can be traced to the vaults of the bank, and it appears that a sum equivalent to it remained continuously within those vaults until removed by the receiver."

Attention is here called to the fact that in the instant case the plaintiff made diligent and commendable effort to collect the money on the certificates before due, or obtain security for their payment when they should mature; that he succeeded in effecting a settlement by the terms of which the bank should retain and use and mingle with its other funds the money represented by the certificate in question, and should for its use, pay 5 per cent interest per annum, if left to maturity; and with the further understanding that the plaintiff might withdraw the money at any time needed, before the maturity of the certificate, but in that event no interest should be paid. The bank did commingle the money with its other funds and did use the same and in so doing was not guilty of a violation of the trust. The fund in these circumstances, of course, could not at any time be traced to the vaults of the bank, nor does it appear that a sum equivalent to it remained continuously within the vaults of the bank until removed by the commissioner. We do not think *Smith v. Fuller, supra,* is applicable to the facts established in the case at bar, nor does its reasoning appeal to us, and we do not follow it.

The facts in the instant case cannot be distinguished in any material particular from the facts in *Officer v. Officer,* 120 Iowa, 389, 94 N. W. 947, 98 Am. St. Rep. 365, where the court held that the fact that plaintiff was a trust creditor did not of itself entitle him to preference over other

creditors; that the deposit was rightful, and the relation of debtor and creditor was created.

In *Paul v. Draper*, 158 Mo. 197, 59 S. W. 77, 81 Am. St. Rep. 296, it was held that a fund deposited in a bank by a guardian of minors, though known by the bank to be deposited by him as trustee, could not be paid in preference to the claims of other depositors; that it was a general deposit, in the absence of evidence making it a special one, and no misappropriation having been intended or accomplished, the owner of the fund became a creditor of the bank, and stood upon the same footing as other general depositors in the bank and entitled to no preference; that "the bank simply became indebted to him in his official capacity, and he took the risk of being able to collect it when he required it." So here, if the deposit was rightful, there appears no reason why plaintiff is entitled to a preference over other general depositors in the bank.

The plaintiff contends, however, that because of special statutory restriction he had no right to make a general deposit; that what he did amounted to an investment of the funds of the estate and this he could not do because prohibited by the statute. We do not concur in this view. True, the statute provides that it shall be lawful for executors and administrators to invest moneys belonging to their respective estates in certain securities to be approved by order of the county court; and from the language of the statute it may be inferred that no other disposition of the funds of an estate can be made, but in this case the plaintiff did not invest, within the meaning of the statute, any funds of the estate. Plaintiff says what he did was equivalent to this: that on March 1, the bank passed over to him the money and he immediately invested it by handing it back to the bank and taking the certificate in question, due in 10 months, bearing 5 per cent interest per annum. We do not so view it. Had the bank passed the money over to him he would have kept it, and conserved it for the benefit of the estate, for that was the exact thing he was trying to do,—to get the money—and as he could not, he made the

best possible terms he could to secure, eventually, the payment of the money which had been placed in the bank by the decedent, Moynihan. He merely continued the relationship of debtor and creditor which had been created by Moynihan. We think the plaintiff acted in the utmost good faith; that his act was not unlawful, unauthorized or wrongful, and was not in violation of the statute. His conduct fully accords with the views of this court expressed in *Regents v. Wilson,* 73 Colo. 1, where it was said: "The rule is that it is the executor's duty, with reference to investments, to treat the funds in his hands as an ordinarily prudent man would treat his own, otherwise he is guilty of negligence." This the administrator did; he could not in the circumstances have done more; he should not have done less.

The judgment of the trial court was right and should be affirmed.

MR. JUSTICE ALLEN, sitting as chief justice, and MR. JUSTICE CAMPBELL concur.