IN RE ESTATE OF O. I. OLSON.

MAY 15, 1928.

REHEARING DENIED SEPTEMBER 28, 1928.

·Tom Boynton, George Osmundson, N. Levinson, and L. R. Boomhower, for appellant.

Thompson, Loth & Lowe, for appellees.

DE GRAFF, J.—O. I. Olson. died testate in April, 1925, at Forest City, Iowa. The appellant, H. H. Eichorn, and O. M. Harmon were named as joint executors of his last will and testament. They qualified as such executors May 15, 1925. William Harmon, Neil Harmon, and Albert .Harmon are residents of North Dakota, and O. M. Harmon is a resident of Minnesota. These four persons are the objectors in the instant case. They were heirs at law of O. I. Olson, and were named among the devisees in his will. These four objectors are the sons of O. I. Olson, but, for some reason not disclosed in the record, assumed the name of Harmon, and are known by that name.

It appears that O. I. Olson, about a month prior to his death, deposited $3,600 with the Winnebago County State Bank of Forest City, Iowa, and received a certificate of deposit, bearing interest at 5 per cent, and due September 18, 1925. This certificate of deposit constituted a part of the assets of the estate of O. I. Olson. Among. the other assets was a certificate of deposit issued by the Forest City National Bank to O. I. Olson for $2,000, a small farm near Forest City, some live stock,

machinery, and household goods, and a promissory note executed by one Holland.

The executor did not take possession of any personal property on the home premises. The personal property was sold at public auction on the Olson farm, and the proceeds of the sale placed in the First National Bank of Forest City, in the name of Olson Brothers. They collected it. The $2,000 certificate of deposit did not come into the possession of the executor Eichorn, but was indorsed by the executor to O. M. Harmon, the other executor, at the suggestion of the "Harmon brothers," and paid to the Harmon brothers and Oscar Olson, another son, and one of the legatees. This was done before Eichorn received his appointment as executor.

The record discloses that, before the will was admitted to probate, practically all of the personal property of which O. I. Olson died seized was received by the heirs at law and objectors herein, and without reference to administration of the property under the will. It appears further that, while the objectors were at Forest City for a few days subsequent to the death and funeral of their father, they attempted to collect from the Winnebago County State Bank the $3,600 certificate of deposit, without reference to the provisions of the will of O. I. Olson. At the request of the objectors, the appellant, Eichorn, and the other executor, O. M. Harmon, attempted to cash the $3,600 certificate of deposit. In fact, the certificate was presented to the bank for payment the day following the funeral of O. I. Olson. The Winnebago bank refused payment, and suggested that the will would first have to be probated. On the following day, the will was offered for probate, and Eichorn and Harmon duly qualified as joint executors of said estate. No doubt is left in the record that each of these objectors, before leaving for their respective homes in North Dakota and Minnesota, directed Eichorn to withdraw the funds on certificate of deposit from the Winnebago County State Bank. These objectors were much displeased by the attitude of said bank in its refusal to cash the certificate, and they felt that the said bank had put them to a lot of trouble.

The executor Eichorn was impersonal in the matter. He was getting nothing for his good offices. He had no knowledge at any time that the First National Bank of Forest City was

financially embarrassed in any way, and considered said bank a sound and solvent banking institution. He was not financially interested in the First National Bank, and was not related in any way to any of its officers. The record is plain that these objectors received all of the proceeds from the sale of the farm, without paying Eichorn any compensation for his services. He did assist the objectors, before the will was probated, in obtaining the proceeds of the $2,000 certificate of deposit. He had the note that was due the estate renewed, and made payable direct to the objectors and Oscar Olson, another legatee. The only asset that came into his hands as executor was the certificate of deposit for $3,600 which was then in the Winnebago County State Bank.

In the light of this record, we first ask: Were the acts and statements of the objectors in pursuading the executor to withdraw the funds out of the Winnebago County State Bank sufficient to constitute an estoppel of their subsequent right to complain of any loss resulting from their own direction? We answer in the affirmative. *Villard v. Villard*, 219 N. Y. 482 (114 N. E. 789); *Campbell v. Miller*, 38 Ga. 304; 24 Corpus Juris 51. Nor may it be said that the executor, under the instant facts, was guilty of any negligence or bad faith in changing the deposit from one bank to the other. An executor or administrator, for the purpose of safely keeping the funds of an estate during administration, has the right to deposit the same in a bank, using due care in selecting the depositary. *In re Estate of Workman*, 196 Iowa 1108; *Incorporated Town of Conway v. Conway*, 190 Iowa 563; 24 Corpus Juris 50.

It follows that an executor who exercises the care of a prudent man in selecting a depositary for the funds of the estate and depositing same in his fiduciary capacity, is not liable for loss sustained by the bankruptcy of the depositary. *Officer v. Officer*, 120 Iowa 389; *In re Estate of Ring*, 132 Iowa 216. Our statute provides that an executor is not chargeable for "any loss occurring without his fault." Section 12048, Code of 1924. Executors and administrators are not insurers.

Second: Was Eichorn's act, as executor, in redepositing the funds evidenced by the first certificate of deposit, a deposit of the funds, and not an investment? Was parol evidence ad-

missible to prove the oral agreement made by the executor with the First National Bank, to show the true nature of the transaction? A certificate of deposit is a written acknowledgment by a bank or banker of a receipt of a sum of money on deposit which the bank or banker promises to pay to the depositor, bearer, the order of bearer, or some other person or his order. 7 Corpus Juris 646. A deposit is neither a loan nor a bailment. Ordinarily, it simply creates the relationship of debtor and creditor between the bank and the depositor. *Leach v. Beazley*, 201 Iowa 337; *State ex rel. Carroll v. Corning State Sav. Bank*, 136 Iowa 79; *Elliott v. Capital City State Bank*, 128 Iowa 275.

The certificate of deposit in question was deposited by Eichorn, as executor of the estate of O. I. Olson, deceased, payable to the order of himself, as such executor, in current funds, on the return of the certificate, properly indorsed, in six or twelve months, with interest at 5 per cent. The executor offered evidence to prove the true nature of this transaction. This was done to meet the contention of the objectors that the executor was a mere money lender to the bank: in other words, that the instant certificate of deposit was a promissory note. The trial court should have admitted the proffered evidence. In *Henderson v. Farmers Sav. Bank*, 199 Iowa 496, 503, it is said:

" 'Our holding is that the nature of the transaction for which it [certificate of deposit] was given,—that is, as to whether it was a loan or a deposit of money,—may be shown by proper parol evidence.' "

It is generally considered that parol evidence is admissible, where it is offered, not for the purpose of varying the terms of a written contract, but for the purpose of explaining the character and true nature of the transaction evidenced thereby. This is the Iowa rule. It is said in *Murray v. First Tr. & Sav. Bank*, 201 Iowa 1325:

"The question simply resolves itself into this: Upon the facts here detailed, was the intervener a depositor or a mere money lender? On that question appellee [the depositor] is entitled to bring all the facts and circumstances surrounding the parties, and to prove oral agreements, notwithstanding the issuance of the written certificates."

See, also, *State ex rel. Carroll v. Corning Sav. Bank*, 139 Iowa 338; *Northwestern Mfg. Co. v. Bassett*, 205 Iowa 999.

The objectors in the case at bar in their petition allege that Eichorn acted without ;order of court or other authority in the premises, and intentionally and deliberately contrived to place funds of the estate in the First National Bank of Forest City, upon interest, and under an arrangement whereby it was impossible for him or any other person to withdraw such funds on demand, or until the expiration of six or twelve months. The executor, in answer, and in resistance to this allegation, pleaded that, as a part of said transaction, and prior to the issuance of said certificate of deposit, he entered into a collateral oral agreement wherein and whereby it was agreed by Eichorn, as executor, and the said First National Bank, that the said bank would pay said certificate of deposit to Eichorn, as executor, at any time he might demand payment thereof, and that said agreement was the moving and inducing cause for said Eichorn, as executor, in accepting said certificate of deposit, and that, pursuant thereto, and relying upon said agreement, the said Eichorn did accept said certificate of deposit, payable to him as executor of the estate of O. I. Olson, deceased. The executor was entitled to establish by competent evidence the nature of his transaction with the bank.

The record does not disclose any conceivable motive on the part of the executor to deposit this fund in the First National Bank, except as a "safety first" proposition. Furthermore, he had the right to believe, under his proffered evidence, that he had a valid arrangement with said bank whereby the certificate could be cashed upon demand, losing only the interest thereon. The issuance of a certificate of deposit does not, in and of itself, indicate the true nature of the transaction, and parol evidence is admissible to show the true nature of the transaction. *State ex rel. Carroll v. Corning State Sav. Bank*, 136 Iowa 79.

Eichorn did act in the utmost good faith. What he did was not unlawful or wrongful. He was attempting to conserve the interests of the estate. See *Thompson v. Orchard State Bank*, 76 Colo. 20 (227 Pac. 827, 37 A. L. R. 115). In the recent case of *McCormick v. Hopkins*, 287 Ill. 66 (122 N. E. 151), pertinent language is used:

"The certificate is called, on its face, a time certificate of

deposit. It is in the usual form in which certificates of deposit are issued by banks. It is not subject to check, is payable at a future time, and bears interest. *But these circumstances do not, of themselves, change the character of the transaction from a deposit to a loan.* * * * It is true that we have held a certificate of deposit such as this to be, in effect, a promissory note, and negotiable as such. * * * It does not, therefore, cease to be a certificate of deposit, *and the transaction is not transformed into a loan.*"

In the instant case we discover no bad faith, no negligence, and no intent on the part of the executor to loan money to the bank; and, had the proffered evidence of the executor been admitted by the court, to prove the moving and inducing cause for the executor to accept the said certificate of deposit, the legal atmosphere surrounding this case would be entirely clarified.

The order and decree entered by the trial court is—*Reversed.*

STEVENS, C. J., and ALBERT, MORLING, and WAGNER, JJ., concur.