[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 84 
One Herman Oscar Auth left with one A. Greenberg, a justice of the peace, the sum of $500.00 as a cash bond for his appearance in the Criminal Court of Record of Duval County. Afterwards he fulfilled the conditions of his bond and demanded of the justice of the peace the return of his money which was refused, the officer giving as a reason for such refusal that the money had been deposited by him in the Bank of South Jacksonville, a State banking corporation, and that such bank had failed and was then in the hands of a receiver. Thereupon appellant filed his bill against the justice of the peace, his official bondsmen, and the receiver of the said bank, wherein he prayed that the justice of the peace and his bondsmen be required to pay to him the said sum of money or that the receiver be required to pay it out of funds in his hands, as such receiver, and also for an accounting.
The said deposit was credited by the bank to "A. Greenberg, Justice of the Peace," and it is alleged in the bill that the said bank knew that said cash bond funds were deposited and credited to that account and that it also knew that said $500.00 was a cash bond trust fund and
 "That said Bank and its said Receiver commingled and confused said Cash Bond Trust Fund with their other funds; and thereby said Bank and its said *Page 85 
Receiver also became and remain equally liable for said $500.00 Cash Bond Trust Fund."
At a hearing upon demurrers interposed by the receiver and the bondsmen, the court dismissed the bill of complaint on the ground that it was without equity.
The receiver insists that inasmuch as the bill does not show that the appellant filed his claim with the receiver within one year from the date of the failure of the bank as required by Section 1, Chapter 7935, Laws of Florida, 1919, Section 6104, Compiled General Laws of Florida, 1927, the bill was properly dismissed, the complainant's claim, if any, being barred by the statute.
The bill, as amended does not charge that a claim was filed by the appellant with the receiver for the amount alleged to have been given to the justice of the peace as a cash bond for appearance nor is it alleged therein that the justice of the peace filed a sworn claim with the receiver for such amount; but it is alleged that within 12 months next before the filing of the original bill, the receiver paid to the justice of the peace a distribution of 12 per cent of said account, and it is contended that the receiver, by paying such amount, waived any additional proof of claim on the part of the justice of the peace or of the appellant.
It is not made to appear that the said sum of $500.00 was deposited to the credit of A. Greenberg "as trustee for the State and for the defendant" (appellant), but it is alleged that said sum was deposited to the credit of "A. Greenberg, justice of the peace, in which account he also deposited other funds."
If the said cash bond had been deposited in the name of A. Greenberg, as trustee for the State and for the appellant, then without question the deposit would have been made in strict compliance with the provisions of our statute. *Page 86 
Complainant does not allege that any misappropriation of the said sum of $500.00 was intended or effected by the deposit being made as it was or by the manner in which the account was kept, nor is it charged that at the time of the failure of the bank, the amount due on the account was not properly credited; and it is not made to appear that such account included deposits of funds belonging to A. Greenberg, as an individual.
Section 8334 (6037) Compiled General Laws of Florida, provides as follows:
 "All committing magistrates, sheriffs, judges and all officers having authority to accept appearance bonds, are hereby authorized to accept cash bonds in all criminal cases. All moneys received as cash bonds under the provisions of this section shall be, by said officers, deposited in some bank to the credit of such officer as trustee for the State and defendant. If the bond shall be estreated, the money shall be immediately paid into the county treasury according to the condition of the said bond, or returned to the defendant if he shall comply with the condition of such bond."
The primary purpose of this statute was to enable defendants in criminal cases to put up cash in lieu of surety bonds when allowed to give appearance bonds. To obviate the hazards accompanying receipt and custody of cash bonds, as well as to protect against loss of the funds, the magistrate or other officer whose duty it is to accept in criminal cases appearance bonds, the Legislature made it mandatory that such bonds be deposited in some bank. In the absence of the mandatory provision of the statute, it would be the duty of the custodian of such funds to exercise that degree of care and prudence in caring for same that ordinarily prudent men exercise in regard to their own affairs and if such funds were deposited by him in *Page 87 
his name as trustee in a reputable bank, he would not be liable for any loss which might occur through the failure of the bank. 26 R.C.L. 1314-16; 1 Perry on Trusts (7th Ed.) 739, Sec. 443; Officer v. Officer, 120 Iowa, 389, 94 N.W. 947, 98 Am. St. Rep. 365, and note.
Recognizing that there was a certain amount of risk attendant upon the keeping of such funds, the Legislature sought to avoid the risk by requiring cash bonds to be deposited in any bank, and thus relieve the custodian thereof of the responsibility of keeping same. It will be observed that the Legislature did not require such deposit to be special or specific or general, but merely that said funds should be "deposited," etc.; and hence it is necessary for us to consider what was intended by the Legislature when it used without qualifications, the word "deposited," as it appears in the statute.
In Collins v. State, 33 Fla. 429, 15 So. 214, this Court held that
 "Deposits by the clients or customers of a bank therewith are divided into two classes, viz: special or specific deposits, and general deposits. When the identical money or other thing deposited is to be restored, or is given to the bank for some specified and particular purpose, as to pay a certain note or other indebtedness, or to act as agent for the collection of bills or notes deposited for collection, such collections to be remitted, such deposits are special or specific, and the property in the deposit remains in the depositor; the bank, in such case, becoming bailee, trustee or agent for the depositor. The simple deposit of money in a commercial bank on account of the depositor, without being complicated by any other transaction than that of the depositing and withdrawing of the moneys by the customer from time to time, is a general deposit, and it is now well settled *Page 88 
both in England and America that such a deposit transfers the ownership of the money to the bank; and that the relationship with reference thereto as between the bank and the depositor is simply that of debtor and creditor at common law. The original and every subsequent general deposit by the customer is in strict legal effect a loan by the customer to the bank."
This case has been cited and approved in City of Miami v. Shutts, 59 Fla. 462, 51 So. 929.
 "A bank becomes the absolute owner of money deposited with it to the general credit of a depositor, in the absence of any special agreement importing a different character into the transaction, and the relationship between the parties is simply that of debtor and creditor." Camp v. First National Bank, 44 Fla. 497, 33 So. 241, 103 Am. St. Rep. 173; City of Miami v. Shutts, supra; Edwards v. Lewis, 98 Fla. 956, 124 So. 746.
Unless a deposit in a bank to the credit of an officer authorized to accept cash bonds "as trustee for the State and defendant" implies a special agreement to hold the same as bailee, trustee or agent of such person for a certain purpose, then such deposit cannot be classified as a special or specific deposit, but comes within the classification ofgeneral deposits.
 In 3 R.C.L. 555, the authors say that where "funds deposited in a bank were held by the depositor in a fiduciary capacity does not, if they were properly deposited, impress upon them a trust in the hands of the bank so as to entitle the cestui que trust to follow them upon the insolvency of the bank, and his claim has no preference over the claim of other creditors of the bank." See also Officer v. Officer, supra; Paul v. Draper, 158 Mo. 197, 59 S.W. 77, 81 Am. St. Rep. 296.
However, as stated in 7 C.J. 633, the authorities are not in entire accord with regard to the effect of a deposit of trust funds in a bank but according to the view *Page 89 
 "which appears to prevail more generally deposits made by trustees, executors, administrators, assignees, agents, public officers and other persons who are serving as fiduciaries are usually considered as simply general deposits and if the bank fails to pay them, the beneficiaries have no peculiar claims or rights over other creditors, but must share like other creditors" Minard v. Watts, 186 Fed. 245; Clisby v. Masten, 150 Ala. 132, 43 So. 742, 124 Am. St. Rep. 64; Fletcher v. Sharpe, 108 Ind. 276, 9 N.E. 142; Retan v. Union Trust Co., 134 Mich. 1, 95 N.W. 1006; Officer v. Officer, supra.
We have had no case in point in this Court, but in Lake Worth Inlet District v. First American Bank Trust Co., 97 Fla. 174,120 So. 316, we find that the complainant, Lake Worth Inlet District, a public corporation, was doing business, and had on deposit a large sum of money, with the Farmers Bank Trust Company of West Palm Beach at the time it failed. Suit was brought for the purpose of having complainant decreed to be a preferred creditor of the insolvent bank by virtue of its (Lake Worth Inlet District's) being a public corporation. Appellant grounded its claim for relief on the prerogative right of the State to be preferred in the payments of its claims over general creditors of the insolvent bank. In disposing of the case, this Court aligned itself with the authorities that hold that
 "Neither the state as such, nor any of its agencies can be preferred in the payment of its simple contract debts over general creditors of an insolvent, in the absence of express statutory authority therefor,"
and affirmed a decree sustaining a demurrer to the bill of complaint.
Now in the decision just referred to, the Court merely discussed the common-law prerogative right of the district *Page 90 
to a preference in the assets of the insolvent bank, but in disposing of the case, the Court also necessarily, though impliedly, held that the district was not entitled to a preference on the theory that is sometimes invoked; namely, that the funds to its credit in the bank belonged to the public and were held as trust funds and that the title thereto was not divested by the deposit in the bank by public officers. If the district had been entitled to preferential payment on the theory that the deposit constituted a trust fund that could be followed in the hands of a receiver, it would have been the duty of the Court to have so said, notwithstanding the fact the claimant based its claim on the theory of its prerogative right of preference. That being true, the decision is in line with the authorities that hold that deposits made in a bank by those acting in a fiduciary capacity and credited to them as such fiduciaries without special agreement to the contrary are general deposits and upon failure of the bank, the beneficiaries have no preferential claim to assets of the bank in the hands of its receiver.
We hold that the Legislature intended cash bonds deposited by officers accepting same in criminal cases become general deposits with the title thereto in the bank.
Here, if the justice of the peace had followed the directions of the statute and had placed such funds to his credit as trustee for the State and for the defendant, there would be no question as to the deposit being a general, as contradistinguished from a special or specific, deposit, with the bank becoming the owner of same. In the absence of that feature of the statute which requires such funds to be credited to the officer accepting appearance bonds as trustee for the State and for the defendant, it would have been the duty of the justice of the peace to *Page 91 
have made the deposit in his name, as justice of the peace. The incorporation of that provision in the statute did not change his status for he was in fact trustee of the fund. Therefore a deposit properly made with or without such provision being in the statute would have put the bank upon notice that a trust fund was being deposited. If, as we have indicated, a deposit of trust funds so made becomes a general deposit and it cannot be followed as a trust fund in the hands of a receiver of a bank and be paid to the beneficiaries as a preferential claim, why should general depositors be penalized by having the deposit established as a preferred claim, merely because it was credited to "A. Greenberg, justice of the peace," where it is not shown that the bank was a party to any fraud or that such deposit was wrongfully used by Greenberg with the knowledge of the bank? If the bond money, to the knowledge of the bank, was actually deposited in such a way as to distinguish such account from the personal account of the officer, even though it did not have that effect in the eye of the law and was not diverted to such officer's personal use, wherein has the appellant been harmed and why should he benefit by the mistake in the technical designation of the depositor?
It seems to be the general rule that where trust funds are, without authority, or unlawfully, deposited by the trustee with the bank's knowledge, the relation of debtor and creditor is not created but the bank holds the money as trustee, and if it subsequently becomes insolvent, the beneficiary has a preferred claim, as against general creditors, if the fund can be traced. See Gray v. Elliott, 37 Wyo. 4, 257, Pac. 345, 53 A.L.R. 554; Thompson v. Orchard State Bank, 76 Colo. 20, 227 P. 827, 37 A.L.R. 115; Re J. T. Knapp Co., 101 Ia. 488, 70 N.W. 626; State v. *Page 92 
American State Bank, 108 Neb. 111, 187 N.W. 762; Smith v. Fuller, 86 Ohio St. 57, 99 N.E. 214, Ann. Cas. 1913 D. 387. See also annotations 65 A.L.R. 693, 51 A.L.R. 1342.
In the instant case, it cannot be said that the justice of the peace made the deposit without authority in view of the fact that the statute directed that it be made. His error, if any, was in having it credited to himself, "justice of the peace," and not "as trustee" for the State and for the appellant.
In a similar situation where an administrator was involved, the Supreme Court of Wyoming in the case of Gray v. Elliott, supra, said:
 "In the absence of bad faith or fraudulent intent it would seem to be difficult to distinguish a situation where an administrator deposits money in a bank in his name as administrator from a situation where he deposits the money in his individual name with the knowledge on the part of the bank that the money is held by him as administrator. In either case the money would be trust money as between the administrator and the beneficiary of the trust, but would not be a trust fund, that is to say, a special deposit, as between the bank and the beneficiary of the trust, in the absence of special circumstances making it so. A deposit made in a bank by A as administrator is, as we held in the original opinion, a general deposit in the absence of special circumstances. Why the deposit, if simply made in the name of A without the addition of the word 'administrator', should by that fact alone be transformed into a special deposit, is difficult to see. The addition of the word 'administrator' surely could not in the one case act as a magic formula to make the deposit general, and the absence of the same word could not, on the other hand, act as a magic formula to make the deposit special." See also Paul v. Draper, supra. *Page 93 
When a bank becomes insolvent
 "The rights and equities of general depositors must then be considered, and the maxim that equality is equity should then, according to the great weight of authority, play a predominant part, and should not, in that event, make a favorite of the beneficiary of a trust, unless the deposit was a special deposit within the meaning of the rules recognized by law in such cases." Gray v. Elliott, supra.
The principles of law that govern this case are not to be confused with those that control in a case where the insolvent bank was itself trustee as was the case in Glidden, v. Gutelius, 96 Fla. 834, 119 So. 140; Myers v. Matusek, 98 Fla. 1126, 125 So. 360.
Whatever appellant's rights may be, as against the officer and his bondsmen, in the event of loss by reason of the failure of the bank, we are not prepared to say that under the circumstances shown by the bill, he should fare better than the general depositors of the bank in the distribution of its assets. Having arrived at this conclusion, the contention of appellee as to the statute of nonclaim becomes of no importance in the consideration of this case.
We find no reversible error in the record and the decree of the lower court is affirmed.