CHARLES BORDER, Appellee, v. STATE SAVINGS BANK OF DEDHAM et al., Appellants.

**BANKS AND BANKING:** **Insolvency—Nonpreferential Trust Fund.**
The fact that a depositor in an insolvent but going bank causes a draft to be drawn upon himself, through his said bank, and directs the bank to pay the same upon presentation, out of his general deposit, which direction the bank fails to comply with, creates no trust relationship which will, in liquidating the affairs of the bank, give the depositor a preference to the amount of the draft.

Headnote 1:   7 C. J. p. 752 (Anno.)

*Appeal from Carroll District Court.*—E. G. ALBERT, Judge.

JUNE 21, 1926.

Action in equity, to have established as a preferred claim against the receiver of the defendant-bank, insolvent, the sum of $1,129.58, on the theory of a constructive trust. The opinion

states the facts. The trial court decreed a preference to exist in favor of the claimant, and from the decree entered, the receiver appeals.—*Reversed.*

*Ben J. Gibson,* Attorney-general, and *Salinger, Reynolds, Meyers & Cooney,* for appellants.

*W. C. Saul* and *W. I. Saul,* for appellee.

DE GRAFF, C. J.—The question involved on this appeal is whether the plaintiff is a preferred creditor of the defendant-bank. The facts are not in dispute.

It appears that the plaintiff went to St. Paul, Minnesota, to buy cattle, and prior to his going, divulged his purpose to an employee of the defendant-bank, and told him, "I am going to have a draft drawn on the bank." Plaintiff did purchase cattle from the Lee Live Stock Commission Company, in St. Paul, and upon his return to Dedham, and before the draft was received for payment, talked with the cashier of the defendant-bank, and told him, "I bought the cattle, and I drew a sight draft on the bank." He further testifies:

"The cashier wanted to know how much it was, and I told him. I told him to pay the draft."

The draft in question was drawn by the Live Stock Commission Company to the order of the Stock Yards National Bank of South St. Paul, Minnesota, to "Chas. Border through State Savings Bank, Dedham, Iowa." It bore date December 13, 1923, and was presented for payment at the State Savings Bank of Dedham on or about the 17th day of December, 1923. It was not paid by the defendant-bank, nor was the drawee, Border, notified of its receipt.

Shortly thereafter, the bank closed its doors, and on January 11, 1924, the superintendent of banking of the state of Iowa was, by the district court of Iowa in and for Carroll County, duly appointed receiver for the insolvent State Savings Bank of Dedham. On March 12, 1924, the plaintiff herein filed his petition, praying for judgment in the amount of the draft, to wit, $1,129.58, with interest, and that said claim be established as a preferred claim against any funds and property in the hands of the receiver of said insolvent bank. Prior to the filing of the

claim with the receiver for the full amount of the deposit, June 24, 1924, by the plaintiff, as depositor, the purchase price of the cattle had been paid by plaintiff.

Upon the trial it was stipulated and agreed between the parties that, at all times between the receipt of the draft by the State Savings Bank of Dedham, on December 17, 1923, and until the appointment of the receiver, the State Savings Bank of Dedham was in possession of cash on deposit belonging to the plaintiff in excess of $1,500; that the amount of the draft in question was never charged against the plaintiff's account in the bank; that no transfer of money from his account to the general assets of the bank was ever made on account of said draft; and that the plaintiff never paid any money into the said bank specifically for the purpose of taking care of the draft in question, either before or after the sending of the draft from St. Paul to Dedham. On this record, the trial court, sitting in equity, established the claim of the plaintiff as a preferred claim against the assets in the hands of the receiver of the bank.

Do the facts establish a trust relation between the bank and this plaintiff? We think not. The oral direction given by the plaintiff to the bank simply amounted to a waiver by him of presentment and acceptance of the draft.

We have frequently said that, in order to impress a trust upon an alleged fund and thereby successfully assert a preferential claim therefor against a receiver, it must be established that the transaction giving rise to the claim involved a trust relation, whereby the wrongdoer stood in relation of a trustee to the injured party, and that the fund claimed is traceable into the hands of the receiver to the augmentation of the assets in his possession. *City of New Hampton v. Leach,* 201 Iowa 316; *Danbury State Bank v. Leach,* 201 Iowa 321. These essentials must find concurrence under the facts of a given case.

Unless it may be said that a trust fund existed in favor of the plaintiff, we have reached the end of the story. It is apparent that the plaintiff was a depositor in the defendant-bank, and that the relation of debtor and creditor existed. The oral direction given to the cashier to pay the draft, when received at the bank, was not a segregation of any part of the funds then on deposit, nor did it create what is termed "a special deposit." The bank did not so view it, and the account of plaintiff on the

books of the bank was in no wise changed. This direction did not prevent the plaintiff from checking out the full amount of his deposit, or from countermanding the instruction given. Plaintiff was a creditor, as a depositor of the bank, at all times. The defendant-bank remained a debtor in the same amount to the same person in the same capacity. It may be true that the oral direction given by Border was sufficient authority to the savings bank to pay and charge the draft to his account, but it did not do so, and the indebtedness to Border remained the same. The bank did not receive any money for the express purpose of paying the draft. The deposit was general, and it remained so. There was no contract of deposit made for the benefit of a third party, and no third party is involved herein.

Our prior decisions having a general bearing on the instant case are distinguishable on the facts and as to the parties litigant. See *Dolph v. Cross,* 153 Iowa 289; *Messenger v. Carroll Tr. & Sav. Bank,* 193 Iowa 608; *Murray v. North Liberty Sav. Bank,* 196 Iowa 734.

With this view of the situation, the decree entered by the trial court is—*Reversed.*

EVANS, STEVENS, and MORLING, JJ., concur.