L. J. TOWNSEND, Appellant, v. L. A. ANDREW, Receiver, Appellee.

OCTOBER 23, 1928.

*Naglestad, Pizey & Johnson,* for appellant.

*John Fletcher,* Attorney-general, *L. B. Forsling,* and *R. B. Pike,* for appellee.

EVANS, J.—I. On September 24, 1925, the appellant was in possession of $466, which he had received from Mrs. Kalar, then residing in South Dakota. She sent the remittance to him, directing him to pay the same upon a deficiency judgment against her, or to keep the same for her later use, as he deemed best. He decided not to apply the same upon the deficiency judg-ment. He decided also to keep the same for her use. He conceived the idea of making such disposition of the same as would be most convenient to him to make remittance to her in small amounts. He carried the same to the Mid-West State Bank, and consulted with the president, who was a personal friend, as to a method of deposit which would be most convenient for him in

making remittances in the future. Pursuant to the advice of the president, he took cashier's checks in $50 amounts therefor. These checks were drawn payable to himself. The bank closed its doors before any of them were ever presented. His contention is that his deposit was special, and that a trust was created thereby, and created also by virtue of the knowledge of the president of the bank of the trust character of the funds. The argument here, in support of the contention, is that, with the knowledge of the president, the appellant deposited Mrs. Kalar's funds in the bank for the purpose of safe-keeping until she should call for them, and that his sole purpose in the method adopted was to return such funds to Mrs. Kalar as fast as she should call for them. It appears that, after receiving the cashier's checks, and while they were in his possession, he formally indorsed each one to Mrs. Kalar. He never delivered any of them to her. After the failure of the bank, and after the appellant had paid to Mrs. Kalar the full amount, he sent his cashier's checks to her, with the request that she indorse the same back to him. This was done by her, and he is before the court, both as the original payee of the checks and as the indorsee of Mrs. Kalar.

We deem it clear that the appellant makes an insufficient showing to entitle him to declare a trust or to claim a preference. The mere fact that the funds were trust funds in his hands at the time of his deposit, and that this fact was known to the president of the bank, would not of itself constitute the bank a trustee of the funds. A trustee, in the exercise of diligence, may lawfully deposit trust funds in a bank. But such a deposit becomes a general one, notwithstanding knowledge of their trust character by the bank. Such was our holding in an early day. *Officer v. Officer*, 120 Iowa 389. This holding has been repeatedly followed in our later cases. In order to constitute the bank a trustee as to such deposit, it is essential to show that it assumed the obligation of a bailee or agent, either of the depositor or of the *cestui que trust*. In the case at bar, the bank assumed no obligation to any third party, nor undertook any duty in relation thereto. It did not promise to apply the money in any particular way, other than to pay the same upon the order of the depositor. It issued and delivered its cashier's checks, which were a confirmation of the obligation of the bank to the

appellant alone. This is in accord with an unbroken line of our cases. *Murray v. North Liberty Sav. Bank,* 196 Iowa 734; *In re Insolvency of Farmers & Merch. Sav. Bank,* 202 Iowa 859; *Border v. State Sav. Bank,* 202 Iowa 27.

The appellant predicates argument in part upon *Smith v. Sanborn State Bank,* 147 Iowa 640, and *Dolph v. Cross,* 153 Iowa 289. In the first of these cited cases, we held that, where a bank accepted a deposit under a special agreement as to the purpose and use of the deposit, it could not thereafter appropriate such deposit to the payment of its own debt. In *Dolph v. Cross,* supra, we held that, where a depositor deposited a specific amount to meet the payment of two checks which he had already issued, and where the bank accepted the deposit for such purpose, the bank could not use the money for any other purpose, and that the deposit was not subject to garnishment in its hands. Such holdings do not support the contention of the appellant herein.

We hold, therefore, that the district court properly refused the preference.

II. It remains to consider the appeal of the superintendent of banking. It is his contention that the court erred in allowing the claim of the appellant as a general depositor, whereas it ought to have been allowed as that of a general creditor only. It is undoubtedly true, as contended by the superintendent, that the issuance of drafts and cashier's checks and the acceptance of the same by the payee create the relation of debtor and creditor. Such has been our repeated holding, and it is needless to cite the cases here. On the face of the cashier's checks involved in this proceeding, such is the relation which would be created thereby. But much oral evidence was introduced in the district court, and was all received without objection. The effect of such oral evidence was to qualify materially the legal effect of the cashier's checks. From such evidence it appears that the real intent of the appellant was to make a deposit, and that he believed that he had left the money as a deposit, as the president of the bank well knew; and that the president of the bank advised the issuance of these checks, as evidence of the deposit, rather than formal certificates, because of their adaptability to convenient use. Such was the theory upon which the case was tried, and no exception or objection was taken to it in the district

court. Upon this state of the record, we think we would not be justified in interfering with that part of the order from which the appellee has appealed.

The order of the district court is, therefore,—*Affirmed on both appeals.*

STEVENS, C. J., and FAVILLE, KINDIG, and WAGNER, JJ., concur.